# UNITED STATES DISTRICT COURT

## DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER G. NEILL, as Conservator and Guardian of K.N., and KYLIE MUNDS, f.k.a. KYLIE NEILL, individually, | Case No.: 10-144-S-REB |
| Plaintiffs/Counterdefendants, | **ORDER** |
| vs. | |
| MINNESOTA LIFE INSURANCE COMPANY, a Minnesota Corporation, | |
| Defendant/Counterclaimant. | |
| MINNESOTA LIFE INSURANCE COMPANY, a Minnesota Corporation, | |
| Third Party Plaintiff, | |
| vs. | |
| CHRISTOPHER G. NEILL, an individual, | |
| Third Party Defendant. | |

Currently pending before the Court are: (1) Defendant/Counterclaimant/Third Party Plaintiff, Minnesota Life Company's, Motion to Deposit and for Partial Order of Discharge (Dkt. 35); (2) Plaintiffs, Christopher G. Neill as Conservator and Guardian of K.N. and Kylie Munds's, Motion for Summary Judgment (Dkt. 36); (3) Third Party Defendant, Christopher Neal's, Motion for Summary Judgment (Dkt. 39); and (4)

**ORDER - 1**

Defendant/Counterclaimant/Third Party Plaintiff, Minnesota Life Insurance Company's

Motion for Summary Judgment (Dkt. 43). The Court has carefully reviewed the record;

considered the oral argument of counsel at the May 9, 2011 hearing; and now enters the

following Order.

## JURISDICTION

The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C.

§ 1332, due to the diversity of the parties and because the amount in controversy exceeds

$75,000. The Court may also have subject matter jurisdiction over the lawsuit, because

the insurance policy at issue is an element of an employee benefit plan within the

meaning of the Employee Retirement Income Security Act ("ERISA"), a federal statute

raising federal question jurisdiction under 28 U.S.C. § 1331. However, the Court does not

have a sufficient record before it to resolve this alternative basis for jurisdiction. The

issue has not been briefed and its resolution does not impact the Court's analysis of the

claims brought forth on summary judgment.

## BACKGROUND

The decedent, Jeannette Neal, was issued an insurance policy, Policy Number

130010T, Plan Sponsor Number 29635-G (the "Policy") through her employment with

Nestle, USA, Inc. ("Nestle"). *See* Ex. A, *Affidavit of Counsel in Support of Minnesota

Life's Motion to Deposit Funds and for Partial Order of Discharge* (Dkt. 35-2). The

Policy includes a basic term life insurance benefit ("Basic Term") in the amount of

$80,000 and an accidental death and dismemberment benefit ("AD&D") in the amount of

$200,000. *Id.* Defendant/Counterclaimant/ Third Party Plaintiff, Minnesota Life Insurance Company ("Minnesota Life") issued the Policy.

On September 27, 2008, Ms. Neill died in an automobile accident. At the time of her death, she was employed by Nestle and married to Third Party Defendant, Christopher Neill. Mr. and Ms. Neill had two children together, the Plaintiffs in this lawsuit, Kylie Munds and K.N. ("Daughters").

When Ms. Neill died, Mr. Neill made a claim to benefits under the policy. On December 5, 2008, Minnesota Life sent Mr. Neill a letter indicating that Mr. Neill was entitled to benefits under the policy as the surviving spouse in accordance with the priority payment language contained in the policy, applicable when there is no primary beneficiary designation. Ex. A, Rossman Affidavit (Dkt. 38-1). Two weeks later, Minnesota Life paid Mr. Neill the $80,000 Basic Term benefit.

Sometime later, a dispute arose concerning the appropriate beneficiaries under the Policy and Minnesota Life refused to pay Mr. Neill the AD&D policy proceeds. While Ms. Neill did not designate a primary beneficiary under the Policy, she had designated her Daughters as secondary beneficiaries. Ms. Neill's 2008 Beneficiary Designation form, confirming her benefit elections as of November 1, 2007, reflects that her Daughters were the only designated beneficiaries. Ex. E, Rossman Affidavit (Dkt. 38-5). However, the Daughters beneficiary status is marked "secondary," and no primary beneficiary was named on the Beneficiary Designation form.

**ORDER - 3**

In a letter dated October 30, 2009, a claims examiner stated that Minnesota Life would pay the Daughters the remaining AD&D benefit due *provided* that the Daughters signed an agreement releasing any claim to the Basic Term benefit already paid Mr. Neill. Ex. B, Rossman Affidavit (Dkt. 38-2). Mr. Neill was instructed to have a guardian ad litem appointed in order to obtain a valid release from K.N., the minor daughter.

## PROCEDURAL HISTORY

On February 10, 2010, Mr. Neill, acting on behalf of K.N., and Kylie Munds filed a lawsuit in state court against Minnesota Life seeking payment of the Basic Term and AD&D benefits. (Dkt. 1-1). The claims in the Complaint include breach of contract, breach of the implied covenant of good faith and fair dealing, bad faith, and declaratory judgment. *Id.*

Minnesota Life removed the case to federal court and initially filed an Answer and Counterclaim (Dkt. 8) for declaratory relief and interpleader, asserting there was a justiciable controversy regarding whether the Daughters or Mr. Neill were the appropriate beneficiaries under the Policy. A few months later, Minnesota Life filed a Third Party Complaint against Mr. Neill individually. Dkt. 20-1. In the event the Court determines that the Daughters are the rightful beneficiaries under the Policy, Minnesota Life seeks to recover the Basic Term benefit paid to Mr. Neill under a theory of unjust enrichment.

On December 23, 2010, Mr. Neill and his Daughters filed a Stipulation Regarding Distribution of Proceeds (Dkt. 34). The Stipulation provides that Mr. Neill disclaims any interest in the AD&D benefits and the benefit should be paid to the Daughters. *Id.* at ¶ 3.

Almost a month later, on January 19, 2011, Minnesota Life filed the pending Motion to Deposit Funds and for Partial Order of Discharge (Dkt. 35). Despite the Stipulation Regarding Distribution of Proceeds (Dkt. 34), Minnesota Life contends a dispute remains over the proper beneficiaries under the policy. *Id.* In addition, both the Daughters and Minnesota Life contend that they are entitled to attorneys fees. *Id.* Minnesota Life would like to deposit the disputed funds with the Court and discharge any claims of liability against it, while retaining the right to seek attorneys fees from the proposed interpleader amount deposited with the Court.

In addition, there are three pending motions for summary judgment. First, the Daughters seek payment for the amounts due under both the Basic Term benefit and the AD&D benefit. Dkt. 37. Second, Mr. Neill seeks summary judgment on Minnesota Life's unjust enrichment claim. Dkt. 40. Third, Minnesota Life seeks a judgment indicating either (1) Mr. Neill is the proper beneficiary entitled to the policy benefits or, alternatively, (2) the Daughters are the proper beneficiaries entitled to the policy benefits and judgment should be awarded against Mr. Neill for the Basic Term benefits mistakenly paid him. Dkt. 43.

## DISCUSSION

As explained more fully below, interpleader is no longer an appropriate mechanism for resolving the conflicting claims at issue in this case. Instead, the Court here resolves the parties' dispute on summary judgment and determines that the Daughters are the proper beneficiaries under the Policy.

**ORDER - 5**

**A.     Minnesota Life's Motion to Deposit Funds and for Partial Order of Discharge**

Claiming no interest under the policy, Minnesota Life seeks to deposit the amount due on the AD&D benefit through the federal interpleader statute, 28 U.S.C. § 1335, and Rule 67. *See* Fed. R. Civ. P. 67; D. Idaho Loc. Civ. R. 67.1. Minnesota Life also seeks to be awarded its costs and reasonable attorneys' fees to be deducted from the interpleader property. For the reasons set forth below, the Court will deny the motion.

As a preliminary matter, Federal Rule of Civil Procedure 22 provides the procedural mechanism for interpleader in the instant case.  The federal interpleader statute provides federal court jurisdiction over interpleader actions involving "[t]wo or more adverse claimants, of diverse citizenship." 28 U.S.C. § 1335. Minnesota Life cannot rely upon this provision, because the alleged adverse parties are all citizens of Idaho.

Nonetheless, Minnesota Life can seek interpleader through Rule 22, provided the Court otherwise has subject matter jurisdiction over the dispute.[1] *See Gelfgren v. Republic Nat'l Life Ins. Co.*, 680 F.2d 79, 81 (9th Cir. 1982). Rule 22 allows a defendant to raise interpleader in a counterclaim as Minnesota Life did in its original Answer and Counterclaim (Dkt. 8). *See* Fed. R. Civ. P. 22(2) ("A defendant . . . may seek interpleader through a crossclaim or counterclaim"). Depositing the funds before seeking interpleader is not necessary. *Gelfgren*, 680 F.2d at 81.

---

[1] Though the federal interpleader statute provides federal jurisdiction over an interpleader claim, it is not necessary where, as here, the Court has an independent basis for exercising federal jurisdiction.

Generally, interpleader "provides a process by which a party may 'join all other claimants as adverse parties when their claims are such that the stakeholder may be exposed to multiple liability." *Aetna Life Ins. Co. v. Bayona*, 223 F.3d 1030, 1033 (9th Cir. 2000) (quoting *Gelfgren*, 680 F.2d at 81). Interpleader can be an appropriate action for relief for ERISA plan fiduciaries, such as life insurers. *Id.* (citing 29 U.S.C. § 1132(a)(3)(B)(ii)). It is also recognized under Idaho law. *See Idaho Code* § 5-321. The purpose of interpleader actions is to "protect a stakeholder who holds funds claimed by two or more adverse parties from multiple liability." *Perkins State Bank v. Connolly*, 632 F.2d 1306, 1310 (5th Cir. 1980).

Interpleader is no longer available to Minnesota Life, who has waited too long and disputed too much to qualify as a disinterested party. First, Minnesota Life has known, since at least October 30, 2009, that there were competing claims for the life insurance benefits at issue. Ex. B, Rossman Affidavit (Dkt. 38-2). Yet Minnesota Life did not file an interpleader action then. This is because Minnesota Life is not a disinterested party. After making the initial payment to Mr. Neill, Minnesota Life has consistently refused to pay the Daughters the AD&D benefit for fear it will also owe the Daughters the $80,000 Basic Term benefit already paid to Mr. Neill. As reflected by the competing motions for summary judgment and Minnesota Life's Third Party Complaint against Mr. Neill, Minnesota Life has an $ 80,000 interest in the Court finding that Mr. Neill is the appropriate beneficiary.

Second, on January 19, 2011, when the instant motion to deposit funds was filed, there was no dispute over the proceeds. On December 23, 2010, the Daughters and Mr. Neill entered a Stipulation Regarding Distribution of Proceeds agreeing that the Daughters should receive the proceeds of the AD&D benefit. Dkt. 34. Without adverse claimants to the identified property, interpleader is no longer appropriate.

Third, because the parties have fully briefed the issue on summary judgment, the Court is in a position to make a determination regarding the Policy beneficiaries. Therefore, allowing Minnesota Life to deposit the funds with the Court no longer makes any practical sense. Instead, the Court is in a position to direct payment to the appropriate party.

For the above reasons, the Court will deny Minnesota Life's Motion to Deposit Funds and for Partial Order of Discharge (Dkt. 35).

**B.      Summary Judgment**

There are three motions for summary judgment. Plaintiffs seek a judgment that they are entitled to the benefits due under the Policy; Minnesota Life seeks a judgment that Mr. Neill is entitled to the benefits due under the Policy; and Mr. Neill seeks summary judgment on Minnesota Life's unjust enrichment claim against him.

As explained more fully below, the Court finds, based on the undisputed facts and the unambiguous Policy language, that the Plaintiffs, Ms. Neill's Daughters, are the rightful beneficiaries under the policy. Further, the Court makes this determination

without resolving whether ERISA applies to the Policy.[2] Both parties request declaratory relief regarding the proper beneficiaries of the Basic Term and AD&D Policy benefits. *See Complaint*, ¶¶ 36-42; *Answer and Counterclaim*, ¶¶ XIX-XXI. Under either ERISA or state law, the Court makes such a determination based on the plain meaning of the Policy.

### 1.	Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and "the non moving party must set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Electrical Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (quoting Fed.R.Civ.P. 56(e)).

---

[2] Because the Court has diversity jurisdiction over this policy dispute, it can resolve the issue without first determining whether the plan is governed by ERISA, thus preempting the state law claims.

## 2.        Cross Motions for Summary Judgment Re Policy Payment

Plaintiffs seek an entry of judgment on the AD&D benefit, because of the Stipulation between Mr. Neill and the Daughters. *Stipulation* (Dkt. 34). This Stipulation provides that the Daughters would receive the proceeds of the AD&D policy. *Id.* Plaintiffs also seek summary judgment on their breach of contract claims; in turn, Minnesota Life seeks summary judgment on its competing claim for declaratory relief.

In resolving the issues before it, the Court applies both state law and the ERISA statute. Whether this insurance contract dispute is governed by state law or ERISA, the result is the same -- Minnesota Life must pay the proceeds of the Policy as directed by the Policy. In the instant case, that means Minnesota Life must pay the proceeds of the Basic Term and AD&D benefits to the Daughters.

While the Court can determine the meaning of the Policy and the proper beneficiaries, it is not appropriate to enter judgment on Plaintiffs' state law claims, because it is possible that ERISA governs this dispute and preempts these state law causes of action. The parties have not briefed the Court on this issue. However, because the Court has diversity jurisdiction over this controversy and both parties seek declaratory relief, the Court can award declaratory relief as to what the Policy requires without making a determination whether ERISA or Idaho contract law applies.

### a.    ERISA Standard

ERISA's civil enforcement provision outlines the possible claims by a participant or beneficiary. 29 U.S.C. § 1132(a). These claims include an action to recover benefits due under the plan. 29 U.S.C. § 1132(a)(1)(B).

When interpreting ERISA plans, "Congress intended that courts apply contract principles derived from state law but be guided by the policies expressed in ERISA." *Richardson v. Pension Plan of Bethlehem Steel Corp.* Cir. 1997)(citing *Scott v. Gulf Oil Corp.*, 754 F.2d 1499, 1502 (9th Cir. 1985)). "Accordingly, . . . terms in an ERISA plan should be interpreted 'in an ordinary and popular sense as would a [person] of average intelligence and experience.'" *Id.* (quoting *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1441 (9th Cir.1990)). Further, [w]hen disputes arise, courts should first look to explicit language of the agreement to determine, if possible, the clear intent of the parties." *Id.* (quoting *Armistead v. Vernitron Corp.*, 944 F.2d 1287, 1293 (6th Cir. 1991)).

### b.    Idaho Law

Similarly, under Idaho law, "[i]nsurance policies are a matter of contract between the insurer and the insured.*" Gordon v. Three Rivers Agency, Inc*., 127 Idaho 539, 542, 903 P.2d 128, 131 (Ct.App. 1995) (citing *Brinkman v. Aid Ins. Co.*, 115 Idaho 346, 352, 766 P.2d 1227, 1233 (1988)). "The primary objective in construing a contract is to discover the intent of the parties, and in order to effectuate this objective, the contract must be viewed as a whole and considered in its entirety." *Bondy v. Levy*, 121 Idaho 993, 996, 829 P.2d 1342, 1345 (1992).

"In interpreting an insurance policy, 'where the policy language is clear and unambiguous, coverage must be determined, as a matter of law, according to the plain meaning of the words used.'" *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 141 Idaho 660, 663, 115 P.3d 751, 754 (2005) (quoting *Clark v. Prudential Property and Cas. Ins. Co.*, 138 Idaho 538, 541, 66 P.3d 242, 245 (2003)). "A policy provision is ambiguous if it is reasonably subject to differing interpretations." *Purdy v. Farmers Ins. Co. of Idaho*, 138 Idaho 443, 445, 65 P.3d 184, 186 (2003).

### c. Plaintiffs are the Appropriate Beneficiaries Under the Policy

In the instant case, the Policy at issue is unambiguous, and its interpretation is a matter of law, properly decided by the Court on summary judgment. As explained more fully below, because the Daughters were the only beneficiaries designated at the time of Ms. Neill's death, *see* Ex. D, *Rossman Affidavit* (Dkt. 38-4), they are entitled to the proceeds under the policies. This determination is based on the premise that in the absence of a properly designated primary beneficiary, the designation of the secondary beneficiary should be given full force and effect.

Generally, secondary beneficiaries are entitled to policy benefits when the primary beneficiary is not eligible to receive the proceeds. *See Baekgaard v. Carreiro*, 237 F.2d 459, 465 (9th Cir. 1956) (holding secondary beneficiary entitled to proceeds of life insurance policy where primary beneficiary waived right to proceeds in property settlement agreement); *In re Estate of Schaad*, No. E044022, 2008 WL 5197170 (Cal. App. Dec. 12, 2008) (holding secondary beneficiary entitled to 401(k) benefits when

primary beneficiary disclaimed any interest to them); *Deveroux v. Nelson*, 517 S.W.2d 658 (Tex. Civ. App. 1974) (holding secondary beneficiary entitled to proceeds of life insurance policy where primary beneficiary barred from receiving funds under Texas slayer statute). Contrary to Defendant's argument, this rule is not limited to instances in which the primary beneficiary is no longer alive.

The Court finds that the complete absence of a primary beneficiary is equivalent to a primary beneficiary who refuses or is prohibited by law from recovering the proceeds to which the primary beneficiary is otherwise entitled. There is no reason to hold to the contrary.

If Ms. Neill had designated a primary beneficiary, then the primary beneficiary would have been entitled to the benefits. However, for whatever reason, Ms. Neal did not name a primary beneficiary; instead, on October 19, 2007, she added her Daughters as secondary beneficiaries to the Policy. Thus, Ms. Neill's Beneficiary Confirmation Statement for 2008 reflects only two beneficiaries, the Daughters. Ex. E, Rossman Affidavit (Dkt. 38-5).

Without a primary beneficiary, the Daughters were the only identified beneficiaries entitled to the benefits due under the Policy. Put another way, the Daughters are the only individuals Ms. Neill identified as entitled to receive death benefits upon her death. Because the policy does not distinguish between types of beneficiaries and there was no primary beneficiary, the Daughters are entitled to the benefits.

**ORDER - 13**

Minnesota Life's central argument is that Mr. Neill's secondary beneficiary designations were invalid, because she lacked a primary beneficiary. This argument is contrary to the plain language of the Policy.[3] *See* Ex. D Rossman Affidavit (Dkt. 38-4).

First, the Policy does not specifically require a *primary* beneficiary; rather, it speaks to "beneficiaries" in general who are designated by the insured. The Policy states:

> We will pay the death benefit to the beneficiary or beneficiaries. A beneficiary is named by an insured to receive the death benefit to be paid at the insured's death.
> ....
>
> If there is more than one beneficiary, each will receive an equal share, unless the insured has requested another method in writing. To receive the death benefit, a beneficiary must be living on the date of the insured's death. In the event a beneficiary is not living on the date of the insured's death, that beneficiary's portion of the death benefit shall be equally distributed to the remaining surviving beneficiaries.
> ...

*Id.* at p. 23.

Second, the Policy also contains default provisions, but they only apply when a beneficiary designation has not been made or the beneficiary is not eligible:

> If there is no eligible beneficiary, or if the insured does not name one, we will pay the death benefit to:
>
> (1) the insured's lawful spouse, if living, otherwise;

---

[3] The Court refers to the Policy in general, because the AD&D benefit incorporates the beneficiary designations in the Basic Term benefit. *Id.* at pp. 31, 33 ("We pay the benefit to the person or persons entitled to receive a death benefit under the terms of the group policy.").

(2) the insured's natural or legally adopted child (children) in equal shares, if living, otherwise;

(3) the insured's parents in equal shares, if living, otherwise;

(4) the insured's brothers and sisters in equal shares, if living, otherwise;

(5) the personal representative of the insured's estate.

*Id.*

Because Ms. Neill designated beneficiaries, the default policy provisions do not apply. There may not have been a primary beneficiary, but there were two secondary beneficiaries, affirmatively identified by Ms. Neill, and there is nothing in the record to suggest that the Daughters were not "eligible" beneficiaries under the plain meaning of that word and the plain meaning of the policy language.

Furthermore, Minnesota Life cannot argue that Ms. Neill's beneficiary designations are invalid when it did not provide Ms. Neill with notice that her designations would fail for want of a primary beneficiary. The Policy states "[a] request to add or change a beneficiary must be made in writing" and "[a]ll requests are subject to our [Minnesota Life's] approval." *Id.*

To defeat Plaintiffs' motion for summary judgment, Minnesota Life now claims there could be a dispute of fact as to whether Mr. Neill was the primary beneficiary under the Policy. *See* Dkt. 48. Minnesota Life's position with regard to the rightful beneficiaries to the Policy has been inconsistent. In a letter sent to Mr. Neill on December 5, 2008, Minnesota Life indicated that the proceeds would be paid to Mr. Neill under the default

provisions "[s]ince there is no named beneficiary." Ex. A. Rossman Affidavit (Dkt. 38-1).

Later, Minnesota Life appeared to acknowledge that the Plaintiffs were the rightful

beneficiaries but refused to pay the proceeds of the Policy until Plaintiffs signed a release

as to the proceeds already paid to Mr. Neill. Ex. B., Rossman Affidavit (Docket 38-2).

Now, to defeat Plaintiffs' motion for summary judgment, Minnesota Life shifts position

again and argues there could be a dispute of fact as whether Mr. Neill was removed as the

primary beneficiary of the Policy. Dkt. 48.

The only evidence offered in support of this argument are equivocating statements

by Edward Matz[4] that, taken out of context, are not entirely consistent with his testimony

as a whole. Ex. C, Rossman Affidavit (Dkt. 38-3). On the whole, the Matz deposition

testimony reflects only that Ms. Neill had identified Mr. Neill as a beneficiary at some

point in time. Nonetheless, it cannot be disputed that, upon Ms. Neill's death, Mr. Neill

was not designated as a primary or secondary beneficiary under the Basic Term and

AD&D policies. Indeed, Minnesota Life's payment to Mr. Neill was based on his status

as a surviving spouse under the default provisions of the policy, not as an "eligible"

beneficiary. Even in its Motion for Summary Judgment, Minnesota Life states, "[Ms.]

Neill did not designate a primary beneficiary for the Policy." *Minnesota Life's*

*Memorandum in Support of Motion for Summary Judgment*, p. 2 (Dkt. 43-1).

---

[4] Matz is an employee of Workscape, a company responsible for the record-keeping
activities related to the Nestle benefits administration. *Id.*, 8:14-23.

Minnesota Life's central argument is that "[Plaintiffs'] rights to the Death Benefit are contingent upon there being a designated beneficiary who predeceases them." *See Minnesota Life Insurance Opposition to Plaintiffs' Motion for Summary Judgment*, p. 9 (Dkt. 48). As discussed above, this is far too limited an interpretation of the law and it is contrary to the plain language of the Policy which says nothing to suggest a primary beneficiary is necessary in order for the secondary beneficiaries to be entitled to benefits.

As a matter of law, the Court finds that the Policy unambiguously provides that Plaintiffs are entitled to the Basic Term and AD&D benefits. Without a primary beneficiary designation, the secondary beneficiaries are entitled to benefits.

### 3. Cross-Motions for Summary Judgment Re Unjust Enrichment and the Voluntary Payment Rule

Both Minnesota Life and Mr. Neill seek summary judgment on Minnesota Life's unjust enrichment claim. Mr. Neill argues that the unjust enrichment claim fails for two reasons: (1) the voluntary payment rule shields him from judgment and (2) the unjust enrichment claim fails as a matter of law, because the benefit conferred upon him was not unjustly retained. Dkt. 40.

Unjust enrichment and the voluntary payment rule both refer to the acceptance of a benefit; however, unjust enrichment requires some level of wrongful conduct in order to make the retention of the benefit unjust, whereas the voluntary payment rule provides for retention of the benefit when there has been no wrong-doing involved. Minnesota Life's unjust enrichment claim fails here, because there is no evidence to support a finding that

Mr. Neill had acted wrongfully when he applied for life insurance benefits as Ms. Neill's surviving spouse.

Unjust enrichment refers to the unjust receipt of something at the expense of another. Unjust enrichment requires three elements: (1) there was a benefit conferred upon the defendant by the plaintiff; (2) the defendant appreciated the benefit; and (3) circumstances suggest it would be inequitable for the defendant to retain the benefit. *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 88, 982 P.2d 917, 923 (1999).

The voluntary payment rule addresses the innocent receipt of something at the expense of another. In such situations, "a person cannot- by way of set-off, counterclaim or direct action- recover money which he or she 'has voluntarily paid with full knowledge of all the facts, and without any fraud, duress or extortion, although no obligation to make such payment existed.'" *Chinchurreta v. Evergreen Mgt., Inc.*, 117 Idaho 591, 593, 790 P.2d 372, 374 (Ct. App. 1989) (quoting *McEnroe v. Morgan*, 106 Idaho 326, 335, 678 P.2d 595, 604 (Ct. App. 1984)). The rule exists to "protect persons who have had unsolicited 'benefits' thrust upon them.'" *Id.* (citing Restatement of Restitution § 2 (1937)).

Generally, the unjust or innocent nature of receipt would be an issue of fact for the jury to decide. However, there are no facts in the record to support a finding that Mr. Neill's receipt of the Basic Term benefit was unjust. Rather, the undisputed facts reflect that Mr. Neill made a claim for benefits upon Ms. Neill's death and received the benefits as the surviving spouse, based on Minnesota Life's decision, not on any sort of

misrepresentation by Mr. Neill. There is no indication that Mr. Neill acted in bad faith by making the claim for benefits or knew that his Daughters were identified as beneficiaries under the Policy. In short, the Court finds nothing in the record to demonstrate that his receipt of the funds was wrongful.

Instead, the only facts in the record on this issue are from Mr. Neill's discovery responses. *See* Ex. A, *Affidavit of Counsel for Minnesota Life* (Dkt. 48-1). According to Mr. Neill, he did not know that he had been removed as a beneficiary under the Policy. *Id.* at pp. 3-4. Instead, he made a claim for Ms. Neill's life insurance benefits and was paid the Basic Term benefit as Ms. Neill's surviving spouse. *Id.* at pp. 4-5. Mr. Neill did not know he was not a beneficiary until April 2009 when a Minnesota Life employee told him he was not entitled to benefits under the policy. *Id.* at p. 5. A plausible inference to be made from these facts is that Mr. Neill did not learn about his Daughters' entitlement to the benefits of the Policy until months after he had received the Basic Term benefits and was waiting to receive the AD&D benefits.[5]

There are no facts in the record to support Minnesota Life's contention that Mr. Neill's receipt of the Basic Term benefits was wrongful. Minnesota Life has not set forth any facts that would suggest Mr. Neill knew about his Daughters claim before Minnesota Life refused to pay the AD&D benefit. Further, there are no facts in the record regarding when the Daughters filed their competing claim to policy benefits. Instead, the record

---

[5] Moreover, by the time he learned of the Daughters competing claims, the money had been mingled with his own funds and spent. *Id.*

**ORDER - 19**

indicates that Mr. Neill made a claim for benefits under the mistaken belief that he was entitled to them and Minnesota Life paid the proceeds of the Basic Term benefit to him, despite the fact that the Daughters were the proper beneficiaries.

There are no facts in the record to explain how Minnesota Life discovered the Daughters' competing claims to the proceeds as secondary beneficiaries. However, Mr. Neill has indicated that he did not know he was not the rightful beneficiary until April 2009 when Minnesota Life refused to pay him the proceeds of the AD&D benefit.

Without any indication that Mr. Neill acted wrongfully, the unjust enrichment claim must fail. Certainly, Mr. Neill made a claim and, in this light, the benefits were not "thrust" upon him. However, there is nothing in the record to suggest filing a claim was wrongful. As the surviving spouse, it was perfectly reasonable for Mr. Neill to file a claim for insurance benefits on the assumption that such benefits might be available.

In short, Minnesota Life has not set forth sufficient facts to survive summary judgment on its unjust enrichment claim. Instead, the undisputed facts reflect that Mr. Neill applied for the life insurance benefits in good faith and Minnesota Life, with full access to all the information necessary to determine the legality of the claim, paid the benefits in error. Under these circumstances, the unjust enrichment claim fails as a matter of law.

## CONCLUSION

Whether ERISA or state contract law applies, the Daughters are the proper beneficiaries of the Basic Term and AD&D benefits. Because no primary beneficiary existed upon their mother's death, they were entitled to collect as secondary beneficiaries.

Accordingly, Minnesota Life's motion for summary judgment on its claim for declaratory relief must be denied and Plaintiffs' claim for declaratory relief must be granted.

In addition, without any facts to suggest that Mr. Neill's claim for benefits was unjust or in bad faith, the Court finds Minnesota Life's unjust enrichment claim fails as a matter of law. Accordingly, Mr. Neill's motion for summary judgment is granted and Minnesota Life's claim for unjust enrichment must be dismissed.

## ORDER

In accordance with the foregoing, IT IS HEREBY ORDERED :

1.  Defendant/Counterclaimant/Third Party Plaintiff, Minnesota Life Company's, Motion to Deposit and for Partial Order of Discharge (Dkt. 35) is DENIED.

2.  Plaintiffs, Christopher G. Neill as Conservator and Guardian of K.N. and Kylie Munds's, Motion for Summary Judgment (Dkt. 36) is GRANTED. Plaintiffs are the rightful beneficiaries of the Policy benefits.

3.  Third Party Defendant, Christopher Neal's, Motion for Summary Judgment (Dkt. 39) is GRANTED

4.  Defendant/Counterclaimant/Third Party Plaintiff, Minnesota Life Insurance Company's Motion for Summary Judgment (Dkt. 43) is DENIED.

DATED: **June 3, 2011**



Honorable Ronald E. Bush
U. S. Magistrate Judge

ORDER - 21